1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   PAUL STANCO; JOSE M. LINARES; and          No. 2:18-cv-00873-TLN-CKD
     HENRY M. STRODKA,
12
             Plaintiffs,
13                                               **ORDER**
             v.
14
     INTERNAL REVENUE SERVICE,
15
             Defendant.
16

17

18        This matter is before the Court on Defendant Internal Revenue Service's ("IRS" or

19   "Defendant") Motion to Dismiss.  (ECF No. 33.)  Plaintiffs Paul Stanco ("Stanco"), Jose M.

20   Linares ("Linares"), and Henry M. Strodka ("Strodka") (collectively, "Plaintiffs") filed an

21   opposition.  (ECF No. 34.)  Defendant filed a reply.  (ECF No. 37.)  For the reasons set forth

22   below, the Court DENIES Defendant's motion.

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

1

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The Court need not recount all background facts of the instant case, as they are set forth fully in the Court's August 31, 2020 Order.  (*See* ECF No. 18 at 2–3.)  In short, Plaintiffs bring the instant action pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  (*See generally* ECF No. 32.)  Plaintiffs seek disclosure of records related to their requirement to file IRS Forms 8938 and 5471.  (*Id.*)  In the original Complaint, Plaintiffs brought claims based on FOIA requests they submitted to Defendant in April 2017 and November 2017.  (ECF No. 1 at 10–14.)  On August 31, 2020, the Court granted Defendant's motion to dismiss Plaintiffs' claims regarding the April 2017 requests for failure to exhaust administrative remedies.  (ECF No. 18 at 8–9, 11.)  Because Plaintiffs argued for the first time in supplemental briefing that they exhausted their April 2017 requests by filing and exhausting substantially identical requests in January 2019, the Court granted leave to amend.  (*Id.*)

Plaintiffs filed the Second Amended Complaint ("SAC") on December 7, 2020.  (ECF No. 32.)  Plaintiffs reassert claims for Stanco's April 2017 Request (Counts One and Two); Linares's April 2017 Request (Counts Three and Four); Strodka's April 2017 Request (Counts Seven and Eight); Stanco's November 2017 Request (Count Eleven); Linares's November 2017 Request (Count Twelve); and Strodka's November 2017 Request (Count Thirteen).  (*Id.* at 11–14.)  Plaintiffs also add new claims for Stanco's January 2019 Request (Count Fourteen); Linares's January 2019 Request (Count Fifteen); and Strodka's January 2019 Request (Count Sixteen).  (*Id.* at 14–15.)  Plaintiffs seek injunctive relief ordering Defendant to conduct a reasonable search for all records responsive to Plaintiffs' requests and to produce those records.  (*Id.* at 16.)

On December 21, 2020, Defendant filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  (ECF No. 33.)  Plaintiffs filed an opposition on January 7, 2021 (ECF No. 34), and Defendant replied on January 14, 2021 (ECF No. 37.)

## II.   STANDARD OF LAW

A motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Rule 8(a) requires that a pleading contain

1   "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R.

2   Civ. P. 8(a); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).  Under notice pleading in

3   federal court, the complaint must "give the defendant fair notice of what the . . . claim is and the

4   grounds upon which it rests."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal

5   citation and quotations omitted).  "This simplified notice pleading standard relies on liberal

6   discovery rules and summary judgment motions to define disputed facts and issues and to dispose

7   of unmeritorious claims."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

8        On a motion to dismiss, the factual allegations of the complaint must be accepted as true.

9   *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court must give the plaintiff the benefit of every

10   reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail*

11   *Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege

12   "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to

13   relief."  *Twombly*, 550 U.S. at 570 (internal citation omitted).

14        Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of

15   factual allegations."  *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

16   While Rule 8(a) does not require detailed factual allegations, "it demands more than an

17   unadorned, the defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A

18   pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

19   elements of a cause of action."  *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678

20   ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

21   statements, do not suffice.").  Thus, '[c]onclusory allegations of law and unwarranted inferences

22   are insufficient to defeat a motion to dismiss for failure to state a claim."  *Adams v. Johnson*, 355,

23   F.3d 1179, 1183 (9th Cir. 2004) (citations omitted).  Moreover, it is inappropriate to assume the

24   plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws

25   in ways that have not been alleged."  *Associated Gen. Contractors of Cal., Inc. v. Cal. State*

26   *Council of Carpenters*, 459 U.S. 519, 526 (1983).

27        Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough

28   facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim

1    has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

2    reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

3    680.  While the plausibility requirement is not akin to a probability requirement, it demands more

4    than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  This plausibility

5    inquiry is "a context-specific task that requires the reviewing court to draw on its judicial

6    experience and common sense." *Id.* at 679.  Thus, only where a plaintiff fails to "nudge [his or

7    her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly

8    dismissed.  *Id.* at 680 (internal quotations omitted).

9          In ruling on a motion to dismiss, a court may consider only the complaint, any exhibits

10   thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201.

11   *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v.*

12   *Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998); *see also Daniels-*

13   *Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (the court need not accept as true

14   allegations that contradict matters properly subject to judicial notice).

15         If a complaint fails to state a plausible claim, "'[a] district court should grant leave to

16   amend even if no request to amend the pleading was made, unless it determines that the pleading

17   could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122,

18   1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995));

19   *see also Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in

20   denying leave to amend when amendment would be futile).  Although a district court should

21   freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to

22   deny such leave is 'particularly broad' where the plaintiff has previously amended its

23   complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir.

24   2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

25         **III.    ANALYSIS**

26         Defendant again moves to dismiss Plaintiffs' claims regarding the April 2017 requests.

27   (ECF No. 33-1 at 2.)  Defendant argues it is undisputed that Plaintiffs failed to administratively

28   appeal those requests and Plaintiffs cannot allege they exhausted their April 2017 requests by

4

1    filing and appealing duplicative requests in January 2019.  (*Id.* at 5.)  In opposition, Plaintiffs

2    argue their failure to administratively appeal the April 2017 requests has "been resolved by either

3    or both of the November 2017 or January 2019 requests," which were fully exhausted and

4    covered the same material.  (ECF No. 34 at 5.)

5        Defendant's arguments stem primarily from *Toensing v. U.S. Dep't of Just.*, 890 F. Supp.

6    2d 138 (D.D.C. 2012).  (*See* ECF No. 33-1 at 5–7.)  In *Toensing*, the plaintiffs originally sought

7    records through FOIA requests in 2007 and 2008.  890 F. Supp. 2d at 132.  However, as in the

8    instant case, the plaintiffs "never administratively exhausted those requests."  *Id.*  "Instead, the

9    plaintiffs chose simply to file subsequent FOIA requests . . . in 2009 and 2010 that were almost

10   entirely duplicative of their 2007 and 2008 requests."  *Id.*  The defendants' responses to the fully

11   exhausted 2009 and 2010 requests "were premised upon the searches and withholding decisions

12   that had been made in conjunction with the 2007 and 2008 requests."  *Id.*  As such, the question

13   before the *Toensing* court was whether to allow the plaintiffs "to challenge, on the basis of

14   constructive exhaustion, (a) the adequacy of [the defendant's] searches and (b) the propriety of

15   [the defendants'] withholding decisions in response to the 2007 and 2008 requests. . . ."  *Id.* at

16   133.  To decide the question, the *Toensing* court looked to the "particular administrative scheme"

17   and "the purposes of exhaustion."  *Id.*

18       As to the administrative scheme, the court stated "allowing the plaintiffs now to use their

19   2010 requests as the vehicle to challenge the adequacy of [the defendant's] searches performed in

20   response to the 2007 and 2008 requests and the propriety of the defendant's 2007 and 2008

21   withholding decisions . . . would clearly frustrate the FOIA administrative scheme generally, as

22   well as the defendant's particular scheme for processing FOIA requests."  *Id.* at 133.  The court

23   further stated "the course taken by the plaintiffs could be viewed as an end run around the . . .

24   administrative exhaustion requirements because . . . FOIA requesters who failed to exhaust their

25   administrative remedies the first time around could routinely cure any failure to exhaust by

26   simply filing a subsequent duplicative request seeking the same records."  *Id.*  Regardless of the

27   potential frustration to the administrative scheme, however, the court proceeded to consider

28   whether the purposes of exhaustion were met.

5

As to the purposes of exhaustion, the *Toensing* court explained "a court must decline to decide the merits of an unexhausted FOIA claim when the plaintiff fails to comply with procedures for administrative review, denying the agency an opportunity to review its initial determination, apply its expertise, correct any errors, and create an ample record in the process." *Id.* at 136.  Importantly, the court noted that an untimely administrative appeal may still satisfy the purposes of exhaustion "so long as the agency chooses to accept and process that appeal and decide the issues presented on the merits."  *Id.*  The *Toensing* court concluded the "essential question" was whether the defendants "ever had an opportunity to review their initial determinations made in 2007 and 2008, such that the purposes of exhaustion could be fulfilled." *Id.*  Applying this rule, the court found the defendants *did* have the opportunity to review their initial determinations with respect to the adequacy of the 2007 and 2008 searches.  *Id.* at 137. The court emphasized that during the administrative appeal of the 2009 request, the Department of Justice's Office of Information and Privacy ("OIP") concluded "the [defendant] conducted an adequate, reasonable search for records responsive to [the plaintiffs'] request."  *Id.* at 137. Because the only searches that had taken place prior to the OIP decision were those performed in response to the plaintiffs' 2007 and 2008 requests, the court found it was reasonable to assume the OIP was referencing those searches in the 2009 decision.  *Id.*  The court thus found "allowing the plaintiffs to challenge the adequacy of the 2007 and 2008 . . . searches would not undermine the purposes of exhaustion."  *Id.*

The withholding decisions, on the other hand, were "a different matter."  *Id.*  The court explained "the record in this case contains no evidence that the OIP ever had the opportunity to review those initial withholding decisions . . . because the scope of the plaintiffs' 2009 administrative appeals were necessarily limited to challenging the components' 2009 actions, which did not involve withholding decisions."  *Id.*  Because the plaintiffs "never identified the defendant's 2007 and 2008 withholding decisions as a basis for their appeals" of the 2009 and 2010 FOIA requests, "the defendant never reviewed the merits of those withholding decisions through an administrative appeal — a fundamental prerequisite for judicial review."  *Id.* at 139. The court also stressed "withholding decisions are often the most labor-intensive and complicated

1   aspect of an agency's FOIA response efforts" and "requiring the same or yet another agency

2   employee to plow the same ground all over again, while a backlog of requesters remain waiting

3   for attention, is not an efficient use of agency resources." *Id.* at 140.  For these reasons, the court

4   held "allowing the plaintiffs now to challenge the defendant's 2007 and 2008 withholding

5   decisions . . . when the agency did not have the opportunity for *de novo* administrative review,

6   due to the plaintiff's failure to appeal [those] decisions, would directly undermine the purposes

7   and policies underlying the administrative exhaustion doctrine."  *Id.*

8           In sum, *Toensing* suggests that despite frustration of the particular administrative scheme,

9   a duplicate request can constructively exhaust a previous, unexhausted request so long as the

10   purposes of exhaustion have been met — i.e., the agency has had an opportunity to review its

11   previous determination on the merits.  It bears mentioning that neither party cites any binding

12   authority from the Ninth Circuit on this issue.  *Toensing* is an out-of-circuit, district court opinion

13   that based its holding on two D.C. Circuit cases that did not involve duplicate requests.  890 F.

14   Supp. 2d at 135 (citing *Hidalgo v. FBI*, 344 F.3d 1256, 1259–60 (D.C. Cir. 2003) (finding

15   although the plaintiff's appeal "may have been timely, in a literal sense, it did not promote the

16   purposes of the exhaustion doctrine" because the appeal was filed "before the FBI acted on [the]

17   request" within the 20-day statutory response period); *Wilbur v. CIA*, 355 F.3d 675, 676–77 (D.C.

18   Cir. 2004) (finding that because the CIA accepted and processed the plaintiff's untimely appeal

19   and was able to review its initial determination, "the policies underlying the exhaustion

20   requirement [were] served.").  As such, *Toensing* is persuasive authority at best.

21           Here, Plaintiffs allege in the SAC that "[t]he January 2019 FOIA requests clearly

22   encompassed and expanded upon all prior requests" and "[i]n July 2019, the IRS issued final

23   appeal determinations on the January 2019 FOIA requests, including upholding the prior IRS

24   disclosure determinations for the responses to the April 2017 FOIA requests."  (ECF No. 32 at 9–

25   10.)  Put simply, Plaintiffs allege the April 2017 requests were constructively exhausted by virtue

26   of the overlapping January 2019 requests.

27           To grant Defendant's motion to dismiss, the Court would need to accept what seems to be

28   Defendant's sweeping argument that a requester can *never* constructively exhaust a FOIA request

1   by filing and fully exhausting a duplicate request.  Defendant fails to provide authority to support

2   this broad proposition.  As discussed, *Toensing* seems to suggest the opposite: that a duplicate

3   request *can* constructively exhaust previously unexhausted issues so long as the purposes of

4   exhaustion — "giving agencies the opportunity to correct their own errors, affording parties and

5   courts the benefits of agencies' expertise, [and] compiling a record adequate for judicial review"

6   — have been met.[1]  890 F. Supp. 2d at 135.

7          In the briefing on the instant motion, the parties cite expansive portions of the record and

8   argue in generalities.  Based on the limited arguments presented and drawing all reasonable

9   inferences in Plaintiffs' favor at this early stage, the Court cannot say that Plaintiffs failed to

10  constructively exhaust their April 2017 requests.  Moreover, "exhaustion under [the] FOIA is a

11  prudential consideration rather than a jurisdictional prerequisite." *Yagman v. Pompeo*, 868 F.3d

12  1075, 1083 (9th Cir. 2017) (citations omitted).  To the extent Defendant wishes to challenge the

13  April 2017 requests again in a future motion, Defendant should cite specific facts in the record

14  showing it never "had an opportunity to review [its] initial determinations . . . , such that the

15  purposes of exhaustion could be fulfilled." *Toensing*, 890 F. Supp. 2d at 136.  As it is, the Court

16  DENIES Defendant's motion.

17         **IV.   CONCLUSION**

18         For the foregoing reasons, the Court DENIES Defendant's Motion to Dismiss.  (ECF No.

19  33.)  Defendant shall file a responsive pleading within twenty-one (21) days of the date of

20  electronic filing date of this Order.

21  ///

22  ///

23

24  ――――――――――――――――――
    [1]      Defendant argues *Toensing* is distinguishable because the plaintiffs there brought claims
25  only as to the subsequent requests, while Plaintiffs here bring claims as to both the original and
    subsequent requests.  (ECF No. 33-1 at 5 n.3.)  However, it is unclear whether that distinction is
26  material as the *Toensing* court analyzed whether it would be appropriate to consider unexhausted
    issues from the original requests that were raised again in the subsequent requests, which is
27  essentially the same question at issue here.  In other words, Defendant fails to explain how there
    is a meaningful difference between Plaintiffs' challenges to the April 2017 requests directly and
28  overlapping issues in the subsequent requests.

8

1          IT IS SO ORDERED.

2     Dated:  August 31, 2021

3

4

5                                              _____
                                               Troy L. Nunley
6                                              United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28